UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

ARBITRON, INC.                                       :

    Plaintiff / Counterclaim Defendant,     :

        -against-                                  :          09-CV-04013 (PAC)
                                                               OPINION AND ORDER
                                           :

JOHN BARRETT KIEFL,

    Defendant / Counterclaim Plaintiff.     :

------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 13, 2010

HONORABLE PAUL A. CROTTY, United States District Judge:

**BACKGROUND**

       This case involves a patent dispute between Plaintiff Arbitron, Inc. ("Arbitron") and Defendant John Barrett Kiefl ("Kiefl") over the inventorship of seventeen U.S. patents (the "Arbitron Patents").[1] The Arbitron Patents cover broadcast audience measurement device technology, including methods and systems for encoding and decoding radio broadcasts and apparatuses for collecting and analyzing information encoded in broadcasts.

       Arbitron is a media and marketing research firm that measures radio audiences through technology called the Personal People Meter ("PPM"). The PPM detects an inaudible code embedded in radio broadcasts and identifies the date, time, and content of broadcasts. This allows Arbitron to measure audiences' listening activities. Arbitron holds a series of seventeen patents pertaining to the PPM, including U.S. Patent No.5,483,276 (the "'276 Patent"), filed in August, 1993.

---

[1] The Arbitron Patents include: U.S. Patent No. 7,486,925;U.S. Patent No. 7,181,159;U.S. Patent No. 7,483,975; U.S. Patent No. 7,460,827; U.S. Patent No.7,316,025; U.S. Patent No. 7,239,981; U.S. Patent No. 6,996,237; U.S. Patent No.6,871,180; U.S. Patent No.6,421,445; U.S. Patent No.5,740,035; U.S. Patent No. 5,581,800; U.S. Patent No. 5,574,962;U.S. Patent No. 5,450,490;U.S. Patent No. 5,787,334;U.S. Patent No. 5,579,124;U.S. Patent No. 5,764,763; and U.S. Patent No.5,483,276.

1

Kiefl is a self-employed consultant specializing in the analysis of audience rating data. On January 19, 1991, Kiefl and a co-inventor filed patent application serial no. 07/792,929 (the "'929 Application"). Two years later, on January 19, 1993, they filed PCT Application No. PCT/CA93/00012 (the "'012 Application") claiming priority to the '929 Application (the '012 Application together with the '929 Application are the "Kiefl Applications"). The Kiefl Applications disclosed an invention called the "Person Meter." Using wireless technology and cellular telephony, the Person Meter, a portable audience measurement device, receives broadcast signals identifying channel selection and transfers the collected data to a central processing facility. On January 17, 1995, the '929 Application issued as U.S. Patent 5,382,970[2] (the "'970 Patent").

Kiefl and Arbitron worked independently; they had no contact until December, 1992, when Kiefl first solicited Arbitron to either license his Person Meter technology or enter into a business relationship with him. To that end, in early February, 1993, Kiefl and Arbitron executed two non-disclosure agreements (the "NDAs") covering the Kiefl Applications. The NDAs required Kiefl to provide written disclosures of the Kiefl Applications and related information to Arbitron's consultants. In exchange of these disclosures, Arbitron agreed to maintain the confidentiality of all of Kiefl's disclosures with the exception of information that was: (i) in the public domain; (ii) received from a third party not under a duty to Kiefl; (iii) known to Arbitron before the disclosure; or (iv) independently developed by Arbitron (Def.'s Second Am. Countercl. Exs. A, B.)

After signing the two NDA's, Kiefl disclosed the Person Meter technology to Arbitron's outside patent counsel, Eugene Flanagan III ("Flanagan"). At the same time, Kiefl also discussed the contents of the Kiefl Applications with an independent contractor designated by Arbitron. Flanagan then prepared a report for Arbitron regarding Kiefl's disclosures. Following these discussions and disclosures, on February 17, 1993, Arbitron informed Kiefl that it was not

---

[2] The '012 Application never issued as a patent.

2

interested in forming a business relationship with him at that time. After several years later, on or about July, 2000, and again on April 19, 2001, Kiefl renewed contact with Arbitron to inquire whether Arbitron was interested in licensing the '970 Patent. On each occasion, Arbitron promptly advised Kiefl that it was not interested.

On August 2, 1993, six months after Kiefl's disclosures, Arbitron filed the patent application that would later mature into the '276 Patent. On March 16, 2004, Kiefl sent Arbitron a letter stating his belief that the disclosed Kiefl Applications contributed to the invention of Arbitron's patents in the audience measurement field. On April 7, 2004, Arbitron denied misappropriating Kiefl's inventions and assured Kiefl that Arbitron had developed its patents independently. On April 21, 2004, Kiefl wrote Arbitron another letter suggesting that two of the Arbitron Patents should reference Kiefl's '012 Application and that Arbitron should apply for reexamination of at least one of the Arbitron Patents. On May 7, 2004, Arbitron claimed that it would not apply for reexamination on Kiefl's request.

On October 10, 2006, Arbitron filed a lawsuit in the Eastern District of Texas against International Demographics, alleging infringement of its '276 patent. <u>Arbitron Inc. v. Int'l Demographics, Inc., et al.,</u> 2009 WL 68875, at *1 (E.D. Tex. Jan 8, 2009). Arbitron argued that the '276 Patent contemplated cellular telephony as a means of transferring data and that the '276 Patent therefore includes cellular telephony. The Texas district court agreed with Arbitron and ordered that claim 17 of the '276 Patent be construed to incorporate cellular telephony. <u>Id.</u> at *9.

Since Kiefl's disclosures to Arbitron included cellular telephony technology and since the Texas district court incorporated cellular telephony into the '276 Patent, Kiefl maintains that he contributed to the '276 Patent and is entitled to joint inventorship. To that end, on April 8, 2009, Kiefl sent Arbitron a letter (the "Kiefl Letter") accusing Arbitron of (i) incorporating inventions disclosed in the Kiefl Applications into the Arbitron Patents, and (ii) violating the NDAs. The Kiefl Letter states that Kiefl was prepared to pursue a declaration of ownership and inventorship

3

as to the Arbitron Patents, as well as breach of contract claims against Arbitron arising from the NDAs.

On April 22, 2009, Arbitron responded to the Kiefl Letter by filing the Complaint in this action. Arbitron's Complaint alleges five counts of declaratory judgment relief. Specifically, Arbitron asks the Court to declare: (1) that Arbitron is the rightful and sole owner in the Arbitron Patents; (2) that Arbitron did not breach the NDAs; (3) that Kiefl is equitably estopped from bringing any claims of inventorship or ownership in the Arbitron Patents; (4) that Kiefl is barred from bring any claims of inventorship or ownership of the Arbitron Patents under the doctrine of laches; and (5) that Kiefl is time-barred from bringing claims for breach of the NDAs arising from Arbitron Patents that have effective U.S. filing dates more than six years prior to April 22, 2009.

Kiefl answered Arbitron's Complaint on July 22, 2009, stating that he did not believe he was the inventor of any of Arbitron's seventeen patents, except for one, the '276 Patent. In fact, on October 27, 2009, Kiefl executed a waiver (the "Kiefl Waiver") of all breach of contract claims arising from the NDAs and all claims of inventorship or ownership of fourteen of the Arbitron Patents (the "Waived Patents") (Ex. A to Kiefl's Amended Answer, Dkt.# 28).[3] On December 2, 2009, Kiefl filed a Second Amended Answer and Third Amended Counterclaims (the "Counterclaims"). In the Counterclaims, Kiefl seeks: (i) a declaratory judgment of inventorship and ownership in the '276 Patent, and (ii) restitution under an unjust enrichment theory as to the monies and/or benefits Arbitron received from the '276 Patent.

On December 18, 2009, Kiefl moved for partial dismissal of Arbitron's Complaint under Fed. R. Civ. P. 12(b)(1) and 12(h)(3). Specifically, Kiefl argues that the Court lacks subject matter jurisdiction over Arbitron's claims for declaratory judgment: (i) as to the ownership and

---

[3] Kiefl's Waiver did not include U.S. Patent Nos. 7,486,925 and 7,181,159. Kiefl maintains that these two patents are not, and have never been, assigned to Arbitron (Kiefl's Br. in Support, at 1n.1, Dkt. # 34.)  Since Arbitron does not own U.S. Patent Nos. 7,486,925 and 7,181,159, it lacks declaratory judgment standing as to these two patents. Indeed, Arbitron's Opposition Brief to Kiefl's motion to dismiss argues for declaratory judgment standing only for the fourteen Waived Patents, not for U.S. Patent Nos. 7,486,925 and 7,181,159, and Arbitron concedes that it owned only fifteen of the seventeen Arbitron Patents (Arbitron's Opp. Br., at 1, Dkt. # 38.)

inventorship of all the Arbitron Patents except the '276 Patent; (ii) that Arbitron did not breach the NDAs; and (iii) that any claims under the NDAs is time-barred. On December 11, 2009, Arbitron moved under Fed. R. Civ. P. 12(b)(6) to dismiss Kiefl's Counterclaims for failure to state a claim. The Court GRANTS both motions.

## DISCUSSION

**I.  Kiefl's 12(b)(1) Motion to Dismiss**

**a. Legal Standards**

Fed. R. Civ. P. 12(b)(1) and 12(h)(3) authorize a court to dismiss a claim for lack of subject matter jurisdiction. Article III § 2 of the United States Constitution limits the jurisdiction of federal courts to "cases" and "controversies." Medimmune, Inc., v. Genetech, Inc., et al., 549 U.S. 118,120 (2007). "The Declaratory Judgment Act provides that, '[i]n a case of actual controversy within its jurisdiction… any court of the United States…may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" 28 U.S.C. 2201(a); Medimmune, 549 U.S. at 125.   Under the Declaratory Judgment Act, the party seeking a declaratory judgment must demonstrate that subject matter jurisdiction exists. Benitec Austl. Ltd. v. Nucleanics, Inc., 495 F.3d 1340, 1343(Fed. Cir. 2007).

For an actual case-or-controversy to exist there must be: (i) a substantial controversy; (ii) between parties having adverse legal interests; and (iii) of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Medimmune, 549 U.S. at 127. This is not a bright line test; rather, "A good question to ask in determining whether an actual case or controversy exists is what, if any, cause of action the declaratory judgment defendant may have against the declaratory judgment plaintiff." Benitec, 495 F.3d at 1345. "Without an underlying legal cause of action, any adverse economic interest that the plaintiff may have against the declaratory defendants is not a legally cognizable interest sufficient to confer declaratory

judgment jurisdiction." <u>Microchip Tech. Inc. v. Chamberlain Group, Inc.</u>, 441 F. 3d 936, 942 (Fed. Cir. 2006).

**b. Declaratory Judgment of Ownership and Inventorship of the Arbitron Patents**

Arbitron seeks a declaration of rightful and sole ownership, title, and interest in the Arbitron Patents. Arbitron brought this action in response to the Kiefl's April 8, 2009 Letter, in which Kiefl threatened to seek a declaratory judgment of inventorship of the Arbitron Patents. In the October, 2009 Kiefl Waiver, however, Kiefl waived any and all claims of inventorship and interest in fourteen of Arbitron's Patents. Absent a legal interest in the patents, Arbitron lacks standing to bring an action for declaratory judgment of ownership. The Kiefl Waiver thus extinguished any actual case or controversy between the parties as to these Waived Patents. There is an actual case and controversy solely with respect to the '276 Patent.[4]

Arbitron argues that the Kiefl Waiver did not extinguish Kiefl's threat of harm and therefore did not undermine the actual case or controversy between the parties. A patent's validity may be challenged for failing to name an inventor (non-joinder). 35 U.S.C. §102. While the Kiefl Waiver extinguished Kiefl's right to file suit for ownership or inventorship in the Waived Patents, it did not eliminate Kiefl's right to allege that he is an inventor of the Waived Patents. By preserving his right to allege inventorship, Kiefl could serve as a witness for a party challenging the validity of the Waived Patents for non-joinder. Arbitron argues that this threat to the validity of the Arbitron Patents keeps alive an actual case and controversy between the parties sufficient to create subject matter jurisdiction.

Invalidity challenges to the Waived Patents, however, do not create a case or controversy between the parties. Since Kiefl waived his rights to claim inventorship, he can not be a party to an invalidity suit. Therefore, though Kiefl may pose an economic threat to Arbitron, Kiefl has no legal claim against Arbitron. Absent an underlying legal cause of action, adverse economic

---

[4] <u>See</u> above, note 3.

interests are insufficient to establish declaratory judgment jurisdiction. Microchip Tech. Inc., 441 F. 3d at 942; see also, Benitec, 495 F.3d 1340.

Accordingly, no case or controversy exists between the parties as to both (i) U.S. Patent Nos. 7,486,925 and 7,181,159; and (ii) the fourteen Waived Patents. The Court grants Kiefl's motion to dismiss Count I of Arbitron's Complaint as to all the Arbitron Patents except the '276 Patent.

**c. Declaratory Judgment that Arbitron Did Not Breach the NDAs and that any Claims under the NDAs are Time-Barred**

Arbitron seeks a Declaratory Judgment that it did not breach the NDAs and that any claims under the NDAs are time-barred. Kiefl seeks to dismiss these two claims for lack of subject matter jurisdiction. Arbitron filed its claims for declaratory judgment as to the NDAs in response to the Kiefl Letter, which threatened to seek a declaration that Arbitron breached the NDAs. The Kiefl Waiver, however, waived any and all breach of contract claims by Arbitron in relation to the NDAs. The Kiefl Waiver thus extinguished the harm that Kiefl threatened in the Kiefl Letter.

Arbitron argues that, despite the Kiefl Waiver, the Court has subject matter jurisdiction over its NDA claims since Kiefl might invoke the NDAs in his Counterclaims. Kiefl's Counterclaims, however, do not relate to the NDAs; they are for unjust enrichment and inventorship. The speculative use of the NDAs as evidence in unrelated claims cannot sustain declaratory judgment jurisdiction. Medimmune, 549 U.S. at 127. Accordingly, no case or controversy exists as to the NDAs. The Court grants Kiefl's motion to dismiss Count II and Count V of Arbitron's complaint for lack of subject matter jurisdiction.

## II. Arbitron's 12(b)(6) Motion to Dismiss Kiefl's Claim of Joint Inventorship of the '276 Paent

### a. Legal Standards

On a motion to dismiss for failure to state a claim, the Court accepts all facts alleged in the complaint as true. Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007). The court draws all reasonable inferences in favor of the plaintiff. Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006). To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007). A complaint does not have to contain detailed factual allegations but a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id.

On a 12(b)(6) motion as to counterclaims, the Court may consider: (i) documents incorporated into counterclaims by reference; (ii) documents attached to counterclaims as exhibits; and (iii) documents that are integral to the counterclaims. Fed. R.Civ. P. 10(c); Chambers v. Time Warner Inc., 282 F.3d 147, 152-153 (2d Cir. 2002); Cortec Industries, Inc. et al. v. Sum Holding L.P., et al., 949 F.2d 42, 48 (2d. Cir. 1991). Under Fed. R. Civ. P. 12(d), a Court may consider materials outside the counterclaims by treating the 12(b)(6) motion as a motion for summary judgment under Fed. R. Civ. P. 56.

### b. Joint Inventorship under 35 U.S.C. § 256

Inventors may apply for a patent jointly even though (1) they did not physically work together or at the same time, (2) each did not make the same type or amount of contribution, or (3) each did not make a contribution to the subject matter of every claim of the patent. 35 U.S.C. §116. Joint inventorship doctrine, however, does not set a lower limit on the quantum or quality of inventive contribution required for a person to qualify as a joint inventor. Eli Lilly & Co. v. Aradigm Corp., 376 F.3d 1352, 1359 (Fed. Cir. 2004). The determination of whether a person is a joint inventor is fact specific. Fina Oil & Chem. Co. v. Ewen, 123 F.3d 1466, 1473(Fed. Cir. 1997).

8

Inventors named in an issued patent are presumed to be correct. Eli Lily, 376 F. 3d at 1358. To prevail on a claim to correct inventorship, a party must prove: (1) a quantum of collaboration or connection between the party and the named inventor(s); (2) the party and the named inventor(s) worked on the same subject matter towards a common goal; (3) a significant contribution made to the conception of the invention; and (4) that the party's "labor [was] conjoined with the efforts of the named inventors." Eli Lilly, 376 F.3d at 1359; Fina Oil, 123 F.3d at 1466.

Kiefl has failed to plead sufficient facts to establish that: (i) he made a significant contribution to the '276 patent; and (ii) he worked towards a common goal with the named inventors of the '276 patent.

**i. Quantum of Collaboration or Connection between Kiefl and the Named Inventors**

Individuals "cannot be totally independent of each other and be joint inventors." Kimberly-Clark, 973 F.2d at 916-917. While joint inventors are not required to work together physically, there must be some collaboration of inventive effort. Id. To establish collaboration between inventors, the inventors must have had an "open line of communication during or in temporal proximity to their inventive efforts." Eli Lilly, 376 F.3d at 1359.

Kiefl does not allege that he worked directly with the named inventors of the '276 patent. Kiefl instead alleges that an open line of communication existed between himself and Arbitron since, in February 1993, he disclosed his Person Meter Technology to Flanagan, Arbitron's patent counsel, and an independent contractor designated by Arbitron. Flanagan prepared a report for Arbitron on February, 1993, regarding Kiefl's disclosures and Arbitron's determination not to proceed with Kiefl. On August 2, 1993, six months after Kiefl's February disclosures, Flanagan filed the patent application that matured into Arbitron's '276 Patent. Thus Kiefl's disclosures occurred in temporal proximity to the conception and prosecution of the '276 Patent. Kiefl alleges that from the time of his disclosures through the time of Arbitron's prosecution of the '276 Patent, Flanagan had an open line of communication with the named

inventors of the '276 Patent. The disclosure of the Kiefl Applications to Flanagan created a nexus between Kiefl and the named inventors, conjoining their work. The test for establishing a quantum of collaboration between a party and named inventors is not demanding and requires only an element of joint behavior. The test has been satisfied by such tenuous collaborations as one inventor seeing the report of another and building upon it, or merely hearing an inventive suggestion at a meeting. Kimberly-Clark, 973 F.2d at 917; see Eli Lilly, 376 F.3d at 1359. Accordingly, the Court will assume that Kiefl has sufficiently pled a quantum of collaboration between him and the named inventors of the '276 Patent.

### ii. Common Goal

Kiefl's Counterclaims allege that he and Arbitron shared a common direction in their inventive efforts, i.e. the development of a portable, personal audience measurement device. The parties' patent applications, however, do not support Kiefl's position. The purpose of Kiefl's '970 Patent is the development of a portable, personal data meter. U.S. Patent No. 5,382,970. The purpose of Arbitron's '276 Patent, by contrast, is the development of a system to promote audience use of a portable audience measurement device in compliance with predetermined usage criteria. U.S. Patent No. 5,483,276. Thus the inventive goals of Kiefl and Arbitron differed: while Kiefl's goal was to invent a device, Arbitron's goal was to promote the use of a device in compliance with specific corporate criteria. Though Kiefl alleges that he and Arbitron shared the goal of inventing a portable, personal data meter, this statement is conclusory; Kiefl does not offer any factual allegations of a common goal; some factual allegations must be made in order to survive a 12(b)(6) motion. Twombly, 127 S.Ct. at 1974. Accordingly, Kiefl's claim for joint inventorship fails.

### iii. A Significant Contribution to the Conception of the Claimed Invention.

Kiefl's joint inventorship claim also fails because it does not allege a significant contribution to the conception of the '276 Patent, the claimed invention. To determine whether a party made a significant contribution to the conception of the claimed invention, courts must

determine whether a contribution is significant when compared to the conception of the invention as a whole. Eli Lilly, 376 F.3d at 1359.  "Conception is the touchstone of inventorship, the completion of the mental part of invention." Id., 376 F.3d at 1359.  Conception occurs when the inventor has developed "a definite and permanent idea of the complete and operative invention as it is…to be applied in practice." Ethicon, Inc. v. United States Surgical Corp., 135 F.3d 1456, 1460 (Fed. Cir. 1998).  A significant contribution to one claim is sufficient to assert joint inventorship. Id.  "Thus, the critical question for joint conception is who conceived…the subject matter of the claims at issue." Id.

Kiefl argues that he contributed to the '276 Patent since Claim 17 of the '276 Patent includes the use of cellular telephony as a means of data transfer.  Kiefl claims he invented the use of cellular telephony to transfer data from an audience measurement device to a central location (Def.'s Third Am. Countercl. ¶ 26).  In Arbitron's infringement suit against International Demographics, the Texas district court ordered that Claim 17 of the '276 Patent includes cellular telephony. Arbitron Inc., 2009 WL 68875, at *9.  Kiefl argues that this Order demonstrates that he made a significant contribution to the conception of the '276 patent.

Claim 17, refers to a "data transfer system;" but does not reference cellular telephony.  Cellular telephony is only one of many means of data transfer systems encompassed within Claim 17 and, standing alone, does not prove that Kiefl's contribution was significant.  Kiefl has not alleged facts indicating that he contributed to the conception of Claim 17's data transfer system as a whole.  Accordingly, cellular telephony is not a significant contribution to the conception of the '276 Patent and the Arbitron's motion to dismiss Kiefl's claim of Joint Inventorship is GRANTED.

**c. Unjust Enrichment of Arbitron**

Kiefl's Counterclaim for unjust enrichment fails.  Unjust enrichment is not available where there is a valid contract between the parties covering the same subject matter. Picture

Patents, LLC v. Aeropostale, Inc., 2009 WL 2569121 (S.D.N.Y.).  The parties must allege a wrong that is "distinct from any contractual obligations." Id.

      Kiefl's Counterclaim for unjust enrichment falls within the scope of the NDAs, a valid contract between the parties.  In fact, before amending his counterclaims, Kiefl based his counterclaims for unjust enrichment on the NDAs.  Kiefl then submitted his Second Amended Answer and Third Amended Counterclaims, repleading his unjust enrichment Counterclaim to eliminate references to the NDAs.  Kiefl's artful repleading, however, does not change the nature of his unjust enrichment Counterclaim, which is coextensive with the subject matter of the NDAs.  Accordingly, the Court grants Arbitron's motion to dismiss as to Kiefl's unjust enrichment Counterclaim.

      In determining whether Kiefl's Counterclaim for unjust enrichment stems from breach of the NDAs, the Court must consider the NDAs' content.  Kiefl's Third Amended Counterclaims, however, do not reference or attach the NDAs.  As the NDA's constitute material outside Kiefl's Counterclaims, the Court must treat Arbitron's motion to dismiss as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d.).  Courts will grant a motion for summary judgment when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

      "Ordinarily… a district court must give notice to the parties before converting a motion to dismiss pursuant to Rule 12(b)(6) into one for summary judgment and considering matters outside the pleadings." Fed. R. Civ. P. 12(d); see also Sahu v. Union Caribide Corp. 548 F.3d 59, 67 (2nd Cir. 2008).  "All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).  In certain circumstances, however, a court "may convert a 12(b)(6) into a motion for summary judgment without formal notice to the parties." 2 Broadway LLC v. Credit Suisse First Boston Mortgage Capital LLC, 2001 U.S. Dist. LEXIS 4875 (S.D.N.Y. 2001). The "essential inquiry is whether the appellant should reasonably have recognized the possibility that the motion might be converted into one

for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." Sahu, 548 F.3d at 67.

Here, the NDAs are the only documents the Court must consider. Both parties have examined the NDAs and argued their scope. Kiefl had ample opportunity to present all related materials. Accordingly, the Court does not need to give Kiefl prior notice that it is converting Arbitron's motion into one for summary judgment.

\* \* \*

Accordingly, the Court GRANTS Kiefl's partial motion to dismiss Arbitron's claims for declaratory judgment: (i) as to the ownership and inventorship of all the Arbitron Patents except the '276 Patent; (ii) that Arbitron did not breach the NDAs; and (iii) that any claims under the NDAs is time-barred (Counts I, II, and V). The Court also GRANTS Arbitron's motion to dismiss Kiefl's Counterclaims concerning his claim of joint inventorship and unjust enrichment. The parties are directed to appear for a status conference on <u>Wednesday, October 6, 2010, at 3:30 P.M in Courtroom 20-C</u>. The Clerk of the Court is directed to close out all pending motions in this case.

Dated: New York, New York
August 13, 2010

SO ORDERED

*(signature)*

PAUL A. CROTTY
United States District Judge